IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 09-cr-00158-MSK

UNITED STATES OF AMERICA,

    **Plaintiff,**

v.

1. CHRISTOPHER COPELAND,
2. CLIFFORD LEONARD,
3. **RICHARD FREY,**
4. JODY STAMP, and
5. DOUGLAS BRANNAN,

    **Defendants.**

---

## PLEA AGREEMENT AND STATEMENT OF FACTS RELEVANT TO SENTENCING

---

The United States, by and through David M. Gaouette, Acting United States Attorney for the District of Colorado, and Linda A. McMahan and Patricia W. Davies, Assistant United States Attorneys, and Defendant RICHARD D. FREY, personally and by counsel Brian R. Leedy, Assistant Federal Public Defender, submit the following Plea Agreement and Statement of Facts Relevant to Sentencing pursuant to D.C.COLO.LCrR 11.1.

1



## I. PLEA AGREEMENT

1. Defendant agrees to plead guilty to Count One of the Indictment charging a violation of 18 U.S.C. §§ 113 (a)(6) and 2, Assault resulting in Serious Bodily Injury and Aiding and Abetting the same.

2. In exchange, the United States agrees to recommend a three point reduction for acceptance of responsibility and to agree, pursuant to Fed. R. Crim. P. 11(c)(1)(C), that a specific sentence of 37 months imprisonment is the appropriate disposition of the case. If the Court does not accept the parties' recommendation, defendant is free to withdraw his plea of guilty and to proceed to trial in this case.

3. Defendant agrees to make restitution in the amount of $8,657.00 to the Bureau of Prisons (BOP), jointly and severally liable with other defendants who are held responsible for the assault upon inmate Dirk Horne, which reflects the costs BOP incurred in providing medical treatment for inmate Horne.

## II. MAXIMUM STATUTORY PENALTY

4. The maximum statutory penalty for violation of 18 U.S.C. § 113(a)(6) is: not more than 10 years imprisonment, not more than $250,000 fine or both; not more than three years supervised release; $100 special assessment fee; and restitution.

5. The Court can impose a prison sentence for a violation of the conditions of supervised release. Costs of supervision and/or incarceration may also be imposed. The conviction may also cause loss of civil rights including but not limited to: the rights to

possess firearms, to vote, to hold elected office, and to sit on a jury.

6. A violation of the conditions of probation or supervised release may result in a separate prison sentence.

### III. STATUTORY ELEMENTS

7. The essential elements of the crime of Assault resulting in Serious Bodily Injury, in violation of 18 U.S.C. § 113 (a)(6) are:

    a. Defendant did knowingly assault Dirk Horne;

    b. This assault occurred within the special maritime and territorial jurisdiction of the United States; namely United States Penitentiary High Security Facility in Florence, Colorado;

    c. The injuries sustained by the victim are serious bodily injury as defined in Title 18, United States Code, Section 1365.[1]

---

[1] Defendant is charged in Count One of the Indictment with assault resulting in serious bodily injury. Title 18, United States Code, Section 1365(h)(3) provides in pertinent part that:
the term "serious bodily injury" means bodily injury which involves–
(A) a substantial risk of death;
(B) extreme physical pain;
(C) protracted and obvious disfigurement; or
(D) protracted loss or impairment of the function of a bodily member, organ, or mental faculty.

(West 2009).

## IV. STIPULATION OF FACTUAL BASIS AND FACTS RELEVANT TO SENTENCING

8. The parties agree there is no dispute as to the material elements which establish a factual basis of the offense of conviction. Pertinent facts are set out below in order to provide a factual basis of the plea and to provide facts the parties believe are relevant, pursuant to § 1B1.3, for computing the appropriate guideline range. To the extent the parties disagree about the facts relevant to sentencing, the statement of facts identifies which facts are known to be in dispute at the time of the plea (§ 6B1.4(b)).

9. The statement of facts herein does not preclude either party from presenting and arguing, for sentencing purposes, additional facts or factors not included herein which are relevant to the guideline computation (§ 1B1.3) or to sentencing in general (§ 1B1.4). Nor is the Court or Probation precluded from the consideration of such facts. In "determining the factual basis for the sentence, the Court will consider the stipulation [of the parties], together with the results of the presentence investigation, and any other relevant information." (§ 6B1.4 Comm.)

10. The parties stipulate the government's evidence would show the date on which conduct relevant to the offense began is April 20, 2008. The parties stipulate the government's evidence would establish the following:

11. The Federal Correctional Complex in Florence, Colorado, contains four institutions within the complex - Federal Prison Camp, Federal Correctional Institute,

United States Penitentiary High Security, and United States Penitentiary Administrative Maximum. There is a separate warden and staff for each institution. Defendant Frey and the other named defendants in this Indictment were inmates housed in the United States Penitentiary (USP) High Security facility. This institution is located within the special maritime and territorial jurisdiction of the United States as defined in 18 U.S.C. § 7(3).

12. The weekend activities allowed for USP inmates are: once released from their cells, they are called to a morning meal. The recreation yard is the center of the USP and an inmate must cross the recreation yard to attend meals. Once an inmate finishes a meal, they are able to return to the recreation yard and participate in various activities - soccer, track, baseball, volleyball, horseshoe pits, bocce ball, basketball, wall ball, and/or handball. There are courts, fields, a sweat lodge, and a gym available for the various activities. Every hour on the hour, there are "moves" which are periods of time where inmates are allowed to go from one area into another area. In this instance, the moves allow entrance into program areas that include the gym, a hobby/craft area, religious services, law library and education. The USP gymnasium is adjacent to the recreation yard and is accessible through two double doors where there is a metal detector located in the hallway leading into the gym. There are cameras on the recreation yard and in the gym and hallway leading into the gym which monitor and record inmate activity.

13. On Sunday, April 20, 2008, by approximately 12:20 p.m., all defendants named in the Indictment were on the recreation yard, along with others, at the USP High Security

Facility in Florence, Colorado. There was a racially based prison disturbance on the recreation yard between two groups of inmates on April 20, 2008, at 12:28 p.m. After approximately 28 minutes of inmate fighting, sufficient staff responded to the USP, and the staff were then able to separate the two groups. Staff formed a line of containment and pushed one group of inmates into the gymnasium, leaving the other group on the yard. To enter the USP gym, the inmates had to go through a set of double doors and through the corridor containing the metal detector. Since the gym inmates continued to be disruptive and antagonistic towards staff, they were secured in the gym alone without correctional officers and remained there for approximately four hours.

14. Defendant Frey and the co-defendants, along with other inmates, were involved in the prison disturbance and were moved into the gymnasium on April 20, 2008. Once the inmates were through the hallway and in the gymnasium alone, inmate Dirk Horne was attacked by Inmates Copeland, Leonard, Frey, and Stamp at approximately 1:27 p.m. on April 20, 2008. The tape of the assault (which will be provided to the Court and Probation as Exhibit 1) revealed the following as to this defendant's conduct: Defendants Frey and Leonard and inmate Horne were standing toward the back of the gymnasium under the basketball net having an intense discussion. During that discussion, Defendant Frey struck inmate Horne on the left side of his face. About the same time, Co-Defendant Leonard moved behind inmate Horne and grabbed him in a choke hold that took Horne to the ground. While Horne was down, Defendant Frey began to assault him with closed fist punches to his

face and head area followed by several kicks with boots in the victim's mid torso area. Defendant Stamp, who was already in the area watching the initial attack, assisted his co-defendants by grabbing victim Horne's arm to pull it away from his face so that Defendants Frey and Leonard could continue to assault the victim by striking and kicking him in the head. Next Defendant Frey left the assault area and did not return during the attack. The assault upon Dirk Horne continued, as evidenced in Exhibit 1, until staff arrived in sufficient numbers to order the inmates to stop and to direct Horne to walk out of the gym to the safe area where staff members were positioned. Once out of harm's way, Inmate Horne collapsed and was taken by wheel chair to medical personnel for immediate attention.

15. The investigation revealed that inmate Horne was beaten by Defendant Frey and others because he refused to participate in the racial disturbance that happened on the same date. Inmate Horne required immediate medical assistance because his entire head was swollen to the point that his eyes were shut, he could not speak, he had difficulty moving, and by all accounts appeared to have suffered severe head trauma and was in an extreme amount of pain. Those who knew inmate Horne could not identify him subsequent to the attack based on the size of his swollen head that turned purple in color. A physician's assistant from the prison examined inmate Horne and reported he was moaning and was unable to speak because of trauma to his mouth and jaw. Based on the extensive trauma to Horne's head, the assistant was concerned that he might have suffered internal head injuries

and referred Horne to Parkview Hospital where he was treated and released. Horne sustained the following injuries: a broken nose, a laceration to his left ear which required stitches, stitches in his lip, fractured ribs, and overall bruising and swelling from the assault. The experts who treated the victim and reviewed the tape of the assault would testify that inmate Horne suffered serious bodily injury under the following prongs of the definition: a substantial risk of death based on the numerous blows to his head resulting in severe swelling and a potential to cause ruptured veins in the victim's head; extreme physical pain as evidenced by the swelling of his head and eyes, his moaning, inability to speak, inability to comprehend, inability to open his jaw following the attack; and protracted and obvious disfigurement based on the victim's nose fracture resulting in permanent scarring and nasal bone disfigurement.

## IV. SENTENCING COMPUTATION

16. The parties stipulate that sentencing in this case will be determined by application of the advisory sentencing guidelines, issued pursuant to Title 28, United States Code, Section 994(1), and Title 18, United States Code, Section 3553.

17. The parties understand the Court may impose any sentence, up to the statutory maximum, regardless of any guideline range computed, and the Court is not bound by any position of the parties (§ 6B1.4(d)). The Court is free, pursuant to §§ 6A1.3 and 6B1.4, reach its own findings of facts and sentencing factors considering the parties' stipulations, the presentence investigation, and any other relevant information (§ 6B1.4 Comm.; §

1B1.4).[2]

18. To the extent the parties disagree about the sentencing factors, the computations below identify the factors which are in dispute (§ 6B1.4(b)). New facts which arise or are discovered may cause a party to change its position with regard to guideline computation or sentencing position. The parties' estimated guideline computation is:

### Guideline Computation

(A) The base guideline is § 2A2.2 with a base offense level of 14.

(B) The following specific offense characteristic applies § 2A2.2(3)(B) -- the victim sustained serious bodily injury for an increase of 5.

(C) The adjusted offense level is 19.

(D) Defendant should receive the adjustment for acceptance of responsibility under § 3E1.1. The resulting offense level would be 16.

(E) The parties understand the Defendant's criminal history computation is tentative. The criminal history is determined by the Court. The parties believe Defendant's criminal history category is VI.

(F) Resulting Guideline Range

---

[2]According to the terms of this plea agreement, if the Court should elect not to impose the 37 months imprisonment, defendant can withdraw his plea of guilty and proceed to trial pursuant to Fed.R.Crim.P. 11(c)(1)(C).

(1) The guideline range resulting from the estimated offense level 16 and the tentative criminal history category VI is 46-57 months. However, this would be limited by the parties agreement that 37 months is the appropriate sentence in this case under Fed. R. Crim. P. 11(c)(1)(C).

(2) The fine range for offense level 16 is $5,000 to $50,000 pursuant to USSG § 5E1.2(c)(3).

(3) Pursuant to USSG § 5D1.2, the term of supervised release is no more than 3 years.

(4) Defendant must pay a mandatory $100 victim's fund assessment and may be required to pay costs of imprisonment and/or supervision.

(5) Defendant owes restitution in the amount of $8657.

## V. WHY THE PROPOSED PLEA DISPOSITION IS APPROPRIATE

19. The parties believe the sentencing range resulting from the proposed plea agreement is appropriate because all relevant conduct is disclosed, the sentencing guidelines take into account all pertinent sentencing factors with respect to this defendant, and the charge to which the defendant has agreed to plead guilty adequately reflect the seriousness of the actual offense behavior.

20. This document states the parties' entire agreement. There are no other promises, agreements (or "side agreements"), terms, conditions, understandings or assurances, express or implied. In entering this agreement, neither the government nor the

defendant have relied, or are relying, on any terms, promises, conditions or assurances not expressly stated in this agreement.

Date 9.28.09   _____
LINDA A. McMAHAN
PATRICIA W. DAVIES
ASSISTANT U.S. ATTORNEYS

Date 9/9/    _____
RICHARD R. FREY
DEFENDANT

Date 9/9/09  _____
BRIAN R. LEEDY
ATTORNEY FOR DEFENDANT

11